IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| TALMAN CONSULTANTS, LLC, an Illinois Limited Liability Corporation | ) ) ) | |
| Plaintiff, | ) ) | Case No. 22-cv-06540 |
| v. | ) ) | Hon. Virginia M. Kendall |
| ALEXANDRA UREVIG, individually and HACKER CONSULTING GROUP, LLC an Illinois Limited Liability Corporation | ) ) ) ) | |

**DEFENDANTS ALEXANDRA UREVIG AND HACKER CONSULTING GROUP, LLC's MEMORANDUM IN SUPPORT OF THEIR MOTION TO DISMISS AND STRIKE PLAINTIFF'S COMPLAINT**

Defendants, Alexandra Urevig ("Urevig") and Hacker Consulting Group, LLC ("Hacker"), by and through their attorneys, Ellis Legal P.C., hereby submit their Memorandum of Law in Support of Their Motion to Dismiss Plaintiff, Talman Consultants, LLC's ("Talman") Complaint.

## INTRODUCTION

The Complaint filed by Plaintiff, Talman, pleads five different causes of action against Defendants including breach of contract, misappropriation of trade secrets under The Defend Trade Secrets Act ("DTSA"), misappropriation of trade secrets under The Illinois Trade Secrets Act ("ITSA"), common law unfair competition, and tortious interference with prospective economic advantages. ECF Dkt. 1. Plaintiff's claims fail to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) for several and independent reasons.

First, Count I is a cause of action for breach of contract predicated on Urevig's non-solicitation and confidentiality restrictive covenants. ECF Dkt. 1-1. These two non-solicitation provisions define client and/or customer so broadly that it encompasses clients in which Talman would have no protectable interest. Similarly, the confidentiality provision in Urevig's

Employment Agreement ("Agreement") is also greatly overbroad such that it is rendered unenforceable.

In Counts II and III, Talman alleges that Urevig misappropriated trade secrets in violation of DTSA and ITSA. ECF Dkt. 1 pp. 11-14. Talman fails, however to identify the "Protected Information" it now seeks to safeguard as anything more than "pricing formulas, permit acquisition processes (including the manuals) and the customer and vendor relationships." ECF Dkt. 1, p. 6 ¶ 28. Furthermore, while Plaintiff alleges "the Manuals cover the gamut of the permit acquisition process" and that it "developed a unique pricing structure for permit acquisition services," Plaintiff provides no explanation of how this information was created or obtained. In all likelihood, this is because the information at issue is in no way trade secret, but is instead a combination of publicly available facts and information that Talman regularly distributes with no restrictions on its usage. ECF Dkt. 1, p. 6 ¶ 28.

In Count IV, Talman pleads a common law count of unfair competition. ECF Dkt. 1, p. 14 Talman predicates this claim on Defendants' use of Protected Information and Defendants' alleged solicitation of Talman's customers. However, because the non-solicitation provision is unenforceable and Talman has not sufficiently identified the Protected Information and how it was created, this claim fails as a matter of law.

In Count V, Talman alleges that Defendants tortiously interfered with Talman's prospective economic advantages. ECF Dkt. 1, pp. 14-15. Initially, this claim also fails because this claim is predicated on an enforceable non-solicitation clause. Moreover, Talman has not alleged nor identified with specificity any third parties who actually contemplated engaging in a business relationship with Defendants.

As such, Plaintiff's Complaint should be dismissed for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6)

## LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), a complaint must be "facially plausible." *Tri-State Disposal, Inc. v. Vill. of Riverdale*, 369 F. Supp. 3d 866, 872 (N.D. Ill. 2019) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007). A claim is only considered "facially plausible" where the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Merely pleading labels and conclusions or a formulaic recitation of the essential elements is insufficient to meet this standard. *Berger v. Nat'l Collegiate Athletic Ass'n,* 843 F. Supp. 3d 285, 290 (7th Cir. 2016). A motion to dismiss under Civil Rule 12(b)(6) requires the Court to determine whether the complaint at hand alleges "enough facts to state a claim for relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556-57 (2007). The court must assume the truth of the complaint's well-pleaded factual allegations, but not its legal conclusions. *See Zahn v. N. Am. Power & Gas, LLC,* 815 F.3d 1082, 1087 (7th Cir. 2016). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are insufficient to withstand a motion to dismiss under Civil Rule 12(b)(6). *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## ARGUMENT

**A. Plaintiff's Complaint Fails to Plead a Breach of Contract Claim.**

To establish a claim for "breach of contract … in Illinois, a plaintiff must allege 'the existence of a valid and enforceable contract, performance of the contract by the plaintiff, breach of the contract by the defendant, and resulting injury to the plaintiff.' *Nat'l Tech., Inc. v. Repcentric Sols*., 2013 WL 6671796, at \*2 (N.D. Ill. Dec. 18, 2013). To be enforceable, a postemployment restrictive covenant "must be reasonable and necessary to protect a legitimate business interest of

the employer." *Carlson Grp., Inc. v. Davenport,* 2016 WL 7212522, at *4 (N.D. Ill. Dec. 13, 2016). "Factors to be considered in this analysis include, not are not limited to, the near-permanence of customer relationships, the employee's acquisition of confidential information through his or her employment, and time and place restrictions." *Reliable Fire Equip. Co. v. Arredondo,* 2011 IL 111871 (Dec. 1, 2011) at ¶16

Talman's Agreement contains two misleading, vague, and conflicting non-solicitation clauses, which restrict Urevig's actions in different ways, and are merely disguised as covenants not to compete. The initial non-solicitation clause found in section 5(b) of the Agreement is unenforceable on its face as it is overbroad. The non-solicitation very broadly prohibits Defendants to

> Call on, solicit, service (or own, manage, operate or control, or be connected as an officer, director, employee, consultant, advisor, agent, independent contractor, representative, partner, member, of or with any person that calls on, solicits, or services) any individual, entity, or successor to any individual or entity which is or was a client or customer of Employer's at any time during the time Employee was engaged to perform any work for Employer, or who Employee had knowledge of prior to termination of employment was a prospective client of Employer.

ECF Dkt. 1-1

The second non-solicitation clause in the Agreement, in Section 5(d) prohibits the Defendants from "directly or indirectly and regarding any location in the United States of America" to:

> call[s] on, solicit, or service any supplier, prospective supplier, licensee, licensor, contractor, or other business relation of the Employer to influence or induce or attempt to influence or induce such person to decrease or cease doing business with the Employer or to make use of the services or purchase the services or products of any business competitive to the Business of the Employer.

ECF Dkt. 1-1

These non-solicitation provisions define client and/or customer so broadly that it encompasses clients in which Talman would have no protectable interest. They restrict former employees from "**be[ing] connected** as an officer, director, employee, consultant, advisor, agent, independent contractor, representative, partner, member, **of or with any person that calls on, solicits, or services**) any individual, entity, or **successor to any individual or entity which is or was a client or customer of Employer**[,]" and even go one step further to limit contact with "**prospective suppliers**", effectively encompassing multiple generations of company representatives, as well as suppliers who may have little to no contact with Talman, let alone any intention of working with it. These provisions are a blanket restriction against the Defendants from having any contact with any customer, regardless of whether Defendants had contact with any customer during the Defendant's employment. This is "far broader than necessary to protect [the employer's] interest in preventing [the employee] from abusing the specific client relationships" built up during the time with the company. *Cambridge Eng'g, Inc. v. Mercury Partners, Inc.*, 378 Ill.App.3d 437, 455 (1st Dist. 2007). Courts will not enforce a provision that prohibits former employees from soliciting customers that they never had contact with while working for their former employer. *McRand, Inc. v. van Beelen*, 138 Ill.App.3d 1045, 1056 (1st Dist. 1985).

Furthermore, these provisions, on their face, encompass both potential and past clients, not just active clients. Illinois courts have expressly found that restrictions on potential customers are unenforceable. *See AssuredPartners, Inc. v. Schmitt*, 2015 IL App (1st) 141863, ¶¶ 39-40 ("The nonsolicitation provision in section 3(b) of the [agreement] precludes [the defendant] from soliciting business from not only existing customers, but also potential customers of plaintiffs and their subsidiaries. We find section 3(b) broader than necessary to protect plaintiffs' interest in

preventing Schmitt from exploiting the client relationship."). "Courts uphold only those noncompetition agreements which protect the employer's legitimate proprietary interests and not those whose effect is to prevent competition *per se*." *Eichmann v. Nat'l Hosp. and Health Care Servs., Inc.*, 308 Ill.App.3d 337 345 (1st Dist.1999).

In *Montel Aetnastak, Inc. v. Miessen*, 998 F. Supp.2d 694 (N.D. Ill. 2014), this Court held that a non-competition clause that prohibited an employee from engaging in any business related to the business of Montel within the United States and Canada was overbroad and unenforceable as it severely restricted the activity of the employee. *Id.* at 717. The Court further stated that the plaintiff argued, in conclusory fashion, that the defendant obtained substantial amounts of confidential information during her employment, which was merely a formulaic recitation of the elements of a cause of action and therefore not enough to overcome the unenforceability of the restrictive covenant. *Id.* The same applies here and this Court should find, as a matter of law, that the non-solicitation provisions are unenforceable.

Furthermore, Talman also claims that Uverig breached the confidentiality clause in the Agreement. Confidential Information is defined in the Agreement as:

> information, whether oral, written, recorded, magnetically or electronically or otherwise stored and whether originated by Employee or otherwise coming into the possession or knowledge of Employee, which is possessed by or developed for the Employer and which relates to the Business of the Employer or potential Business of the Employer, which information is not reasonably ascertainable by the Employer's competitors or by the general public through lawful means, including but not limited to information regarding the Employer's products, services, customer contracts, pricing, formulae, vendors, suppliers, specifications, designs, processes, business affairs, business plans, strategies, finances, computer programs, research, customer development, planning, production plans, purchasing, finance, marketing, customer relations and customer information, and other information received by the Employer from others which the Employer has an obligation to treat as confidential.

ECF Dkt. 1-1

Similar confidentiality provisions have been deemed unenforceable in comparable cases. In *North American Paper Co. v. Unterberger,* 172 Ill.App.3d 410 (1988), the court held that an employment agreement that prohibited the disclosure of "any and all items of whatever nature or kind which the Employee has learned of, acquired or obtained knowledge of, conceived, developed, originated, discovered, invented or otherwise become aware of during the period of his employment, provided that this paragraph shall not apply to information within the public domain and generally known within the paper and packaging industry" was overbroad and unenforceable. In *AssuredPartners, Inc. v. Schmitt,* 2015 IL App (1st) 141863, ¶¶ 39-40, the Court similarly held that the confidentiality provision that prohibited "the use or disclosure of any "information, observations and data (including trade secrets) obtained by [Schmitt] during the course of [his] employment with [Jamison/ProAccess] concerning the business or affairs of [plaintiffs] and their respective Subsidiaries and Affiliates" was also unenforceable. *Id.* at 46.

Even though the confidentiality clause allows for disclosure of Confidential Information that is reasonably ascertainable by Talman's competitors or by the general public through lawful means, the provision is still unenforceable. Courts have held that there is a great deal of information that is not "generally" known to the public but does not warrant protection under a confidentiality provision. *See Rubloff Development Group, Inc. v. SuperValu, Inc.*, 863 F.Supp.2d 732, 749 (N.D.Ill.2012). The confidentiality provision in Urevig's Agreement is overbroad and unenforceable and, therefore, Talman's breach of contract claim fails.

**B. Plaintiff's Complaint Fails to Plead its Trade Secrets Claims.**

For Plaintiff to show that Defendants misappropriated a trade secret, Plaintiff must demonstrate that the information in question was "(i) secret (that is, not generally known in the industry), (ii) misappropriated (that is, stolen from it rather than developed independently or

obtained from a third source), and (iii) used in the defendants' business." *Composite Marine Propellers, Inc. v. Van Der Woude*, 962 F.2d 1263, 1265–66 (7th Cir. 1992); see also *Abrasic 90 Inc. v. Weldcote Metals, Inc.*, 364 F. Supp. 3d 888, 896 (N.D. Ill. 2019). To be a trade secret the information must be (1) "sufficiently secret to impart economic value because of its relative secrecy" and (2) the Plaintiff must make "reasonable efforts to maintain the secrecy of the information." *Learning Curve Toys, Inc. v. PlayWood Toys, Inc.*, 342 F.3d 714, 722 (7th Cir. 2003); see also 18 U.S.C. § 1839(3).

Plaintiff attempts now to re-cast publicly available information as confidential trade secrets. Plaintiff's attempts, however, are unsuccessful as Plaintiff does not provide a specific description of the information at issue. Plaintiff must identify more than general categories of information. *PrimeSource Bldg. Products, Inc. v. Huttig Bldg. Products, Inc.*, 2017 WL 7795125, at *15 (N.D. Ill. Dec. 9, 2017). Rather, Plaintiff must single out a particular trade secret and explain how it created and safeguarded that information. See *Composite Marine Propellers, Inc. v. Van Der Woude*, 962 F.2d 1263, 1266 (7th Cir. 1992) (noting that the plaintiff must point to concrete secrets, not broad areas of technology, to prevail on trade secrets claim); *see also Service Ctrs. of Chi., Inc. v. Minogue*, 180 Ill.App.3d 447 (1989) (reversing grant of preliminary injunction where plaintiff "consistently failed to identify with any degree of particularity the alleged trade secrets or confidential information in need of protection"). Here, Plaintiff has not identified a specific trade secret as Plaintiff has only provided a generic explanation of the information and, at best, hinted at its efforts to create and safeguard it.

In its Complaint, Plaintiff fails to identify the "Protected Information" it now seeks to safeguard as anything more than "the pricing formulas, permit acquisition processes (including the manuals) and the customer and vendor relationships." ECF Dkt. 1, p. 6 ¶ 28. Plaintiff's failure to

do so is fatal to its claims as "the court cannot analyze whether a piece of information was sufficiently secret to derive economic value or whether [plaintiff] took reasonable efforts to keep information secret without first knowing, with particularity, what information comprises the secret." See GlobalTap LLC v. Elkay Mfg. Co., 2015 WL 94235, at *6 (N.D. Ill. Jan. 5, 2015).

Talman argues that Urevig "pirated" the Protected Information and has been using it to solicit Talman's customers. ECF Dkt. 1, p. 6 ¶¶ 65-66 Urevig received the Protected Information through the normal course of her employment with Plaintiff. Even if Urevig did not return the information, as Plaintiff alleges, the failure to return lawfully acquired information does not constitute "misappropriation" of that information under the DTSA. See Prominence Advisors, Inc. v. Dalton, 2017 WL 6988661 at *4 (N.D. Ill. Dec. 18, 2017) (rejecting argument that the defendant obtained information by improper means where he retained access, initially acquired during the normal course of his employment, to a DropBox folder and external hard drive that contained confidential information). See also Call One, Inc. v. Anzine, 2018 WL 2735089, at *9 (N.D. Ill. June 7, 2018) (holding a defendant did not acquire trade secrets "by improper means simply by sending it to her personal e-mail account").

Urevig's disclosure to Hacker and use of the information is similarly not misappropriation. As a threshold matter, plaintiff cannot simply allege misappropriation based upon "information and belief" without pleading "reasonable grounds for its suspicions." Indus. Packaging Supplies, Inc. v. Channell, 2018 WL 2560993, *2 (N.D. Ill. 2018). This, however, is precisely the basis for Plaintiff's claim that Urevig disclosed and misused purported trade secrets. ECF Dkt. 1, p. 3, 10 at ¶ 10 and 41. In Busey Bank v. Turney, 2022 WL 92940 (Jan. 10, 2022) at *6, the plaintiff's misappropriation of trade secrets relied on allegations on "information and belief" to supports its claims that the defendant used plaintiff's customer lists to solicit customers. The Court held that

despite printouts of emails showing the defendant sending emails that contained customer lists, and despite allegations that the plaintiff lost business, the plaintiff did not support a claim of trade secret misappropriation. *Id.* Here, Talman uses the same speculative allegations without any factual or specific support, and these are insufficient to allege misappropriation of trade secrets on behalf of the Defendants. Counts II and III should be dismissed.

### C. Plaintiff's Complaint Fails to Plead its Common Law Unfair Competition Claim.

In Illinois, the common law tort of unfair competition encompasses a "broad spectrum of law", and it is difficult to determine exactly what elements are required in order to prove such a claim. *Integrated Genomics, Inc. v. Kyrpide,* 2008 WL 630605, *13 (N.D.Ill.2008); *see also Zenith Elecs. Corp. v. Exzec, Inc,* 1997 WL 798907 (N.D. Ill. Dec. 24, 1997) at *14 (observing that "the common law tort of unfair competition encompasses a 'broad spectrum of law'" and noting that the "court has not found an Illinois case which definitively sets forth the elements of a common law unfair competition claim for all factual scenarios"). The Seventh Circuit has stated that "the law of unfair competition ... is elusive; its elements escape definition. *Wilson v. Electro Marine,* 915 F.2d 1110, 1118 (7th Cir.1990)

This cause of action is essentially duplicative of Talman's cause of action for tortious interference as pled in Count V. See *Soderlund Brothers, Inc. v. Carrier Corporation,* 278 Ill.App.3d 606, 615–20 (1st Dist. 1995) (case analysis concluding that the privilege of competition in good faith extends to the tort of tortious interference with prospective economic advantage and describing unfair competition as an unprivileged tortious interference with prospective economic advantage); see also *Corroon & Black of Illinois, Inc. v. Magner,* 145 Ill.App.3d 151, 167, 494 N.E.2d 785, 794, 98 Ill.Dec. 663 (Ill.App.1986) (recognizing that where a business relationship creates no enforceable rights against parties—a contractual relationship or a protectable property

interest—there is no cause of action against a *bona fide* competitor "unless the circumstances indicate unfair competition, *i.e.,* an unprivileged interference with prospective advantage"); *Zenith Elecs. Corp. v. Exzec, Inc,* 1997 WL 798907 (N.D. Ill. Dec. 24, 1997) at *6 (the principal form of the tort of common law unfair competition falls under the rubric of tortious interference wIth prospective economic advantage).

Talman's Count for common law unfair competition is sparse and is predicated on Defendants' use and disclosure of Protected Information and Defendants' alleged solicitation of Talman's customers. ECF Dkt. 1, p. 14 ¶¶ 69-71. As indicated above, Talman's claims for breach of the non-solicitation clauses and for misappropriation of trade secrets fail as a matter of law, and thus, Talman's vague claim for unfair competition must also fail. Moreover, Talman is attempting to take two bites at the apple. Count IV for Common law unfair competition is essentially a wolf in sheep's clothing considering unfair competition is synonymous with the tort of tortious interference with prospective economic advantage, and this Count should be dismissed.

**D.      Plaintiff's Complaint Fails to Plead its Tortious Interference Claim.**

The elements of the tort of intentional interference with a business expectancy include (1) a reasonable expectancy of entering into a valid business relationship; (2) the defendant's knowledge of the expectancy; (3) the defendant's intentional and unjustified interference that prevents the realization of the business expectancy; and (4) damages resulting from the interference. *Mannion v. Stallings & Company, Inc*., 204 Ill.App.3d 179, 188 (1st Dist. 1990). Plaintiff's Complaint cannot meet the first and fourth elements, at a minimum, of tortious interference and as a result, Talman has no basis for its claim for tortious interference.

First, proof of a past customer relationship is not sufficient to prove a reasonable expectation of a future business relationship. *Intervisual Communications, Inc. v. Volkert,* 975

F.Supp. 1092, 1103 (N.D.Ill.1997). In *Intervisual,* the court stated that the plaintiff must **specifically identify third parties who actually contemplated entering into a business relationship with** the defendant. *Id.* (emphasis added). The court held that if a plaintiff were not required to specifically identify parties who actually contemplated entering into a business relationship, "liability under a theory of tortious interference with prospective business expectancies would be virtually without limit and impossible to calculate." *Id.* Talman. Talman has not pled any specific allegations that Defendants wrongfully interfered with any business relationship with PirTano Construction.[1]

Second, Talman has not met the fourth requirement in that Talman has not specifically alleged any damages because of the tortious interference. The only claim Talman makes in its entire Complaint about any monetary damages is that it noticed a substantial decrease in the amount of permit acquisition business it was getting from PirTano Construction Company, which it alleges to be one of Talman's largest permit acquisition clients. ECF Dkt. 1, ¶ 40. At no point has Talman stated how it was damaged, the extent of its damages, or any other allegation other than a conclusory statement that a singular client decreased its permit acquisition. At no point has Talman pled or alleged any link between this client's decrease in permit acquisition and any tortious interference by the Defendants. Thus, Count V should be dismissed.

E.  **Plaintiff's Complaint Fails to Plead Separate Causes of Action against Defendants Urevig and Hacker**

The complaint must simply provide "a short and plain statement of the claim showing that the pleader is entitled to relief." *Chatz v. World Wide Wagering, Inc.*, 413 F. Supp. 3d 742, 749 (N.D. Ill. 2019). If doing so would promote clarity, each claim founded on a separate transaction

---

[1] Urevig has testified that PirTano is a client but that she did not solicit them and that PirTano is *still* a client of Talman.

or occurrence must be stated in a separate count or defense. Fed. R. Civ. P. 10. This is such a case.

These specificity requirements are not empty formalism, but a pleading necessity to allow Raina to frame an appropriate response and prevent the use of conclusory complaints as a pretext for discovery. See *MPC Containment Systems, Ltd. v. Moreland*, 2006 WL 2331148, *2- 3 (N.D. Ill. Aug. 10, 2006); *Sequel Capital Corp. v. Airship Intern., Ltd.*, 148 F.R.D. 217, 219 (N.D. Ill. 1993). Here, Plaintiff's complaint alleges a cause of action against both Urevig and Hacker in each count. In doing so, Plaintiff comingles both Defendants' actions, knowledge, and intent as it relates to Plaintiff's various claims without any specifying or differentiating of Hacker's role in the allegations from that of its Co-Defendant, Urevig. Talman has not alleged sufficient facts demonstrating that Hacker should be a defendant to any of the causes of action in Plaintiff's Complaint. As such, Plaintiff's Complaint must be dismissed as it cannot be freely answered in its current form.

## CONCLUSION

For all the reasons stated above, this Court should grant Defendants' Motion to Dismiss Plaintiff's Complaint, and any other relief that this Court deems just.

Dated: December 12, 2022

                                                                                Respectfully submitted,

John C. Ellis
Justin DeLuca
Samantha Ditore
David DeSchepper
ELLIS LEGAL P.C.
200 West Madison Street, Suite 2670
Chicago, Illinois 60606
(312) 767-3256
jellis@ellislegal.com
jdeluca@ellislegal.com
sditore@ellislegal.com

ddeschepper@ellislegal.com

## CERTIFICATE OF SERVICE

I hereby certify that on December 12, 2022, a copy of the foregoing was filed with the Court using the Clerk of Court's CM/ECF system, which by its operation will send notice of this filing to all counsel of record.

/s/ *John C. Ellis*
*Counsel for Defendants*
