IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| TALMAN CONSULTANTS, LLC, an Illinois Limited Liability Corporation, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>ALEXANDRA UREVIG, individually and HACKER CONSULTING GROUP, LLC, an Illinois Limited Liability Corporation, )<br>)<br>Defendants. ) | Civil Case No. 1:22-cv-06540<br><br>Hon. Virginia M. Kendall |

**PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO DISMISS**

Plaintiff Talman Consultants, LLC ("Talman"), by and through its attorneys, Williams, Bax & Saltzman, P.C., submits its response to Defendants Alexandra Urevig's ("Urevig") and Hacker Consulting Group, LLC's ("Hacker") (collectively "Defendants") Motion to Dismiss. In support of its response, Talman states as follows:

**INTRODUCTION**

Talman filed its Complaint in this case to recover the confidential proprietary and trade secret information that Urevig took from Talman without authorization while she was still employed at Talman. Talman's Complaint also seeks to prohibit Urevig and her company, Hacker, from continuing to unfairly compete with Talman by using Talman's own trade secrets against it to, among other things, solicit Talman's clients. Talman also seeks to recover damages for the business it already lost because of Defendants' unlawful conduct.

Urevig and Hacker have already stolen a precipitous amount of business from Talman's largest permitting client and have been caught using Talman's confidential pricing formula and undercutting Talman's prices. When Urevig voluntarily resigned from Talman, she told Talman's

owner and various supervisors that she was leaving the industry. This was apparently done to deliberately mislead Talman, however, because by the time she made the false statements, Urevig had already incorporated Hacker and misappropriated Talman's trade secrets.

The breach of contract claim in Count I of the Complaint is based on Urevig's employment agreement in which she agreed that she would not use or disclose Talman's trade secrets and other confidential information. Urevig's agreement also prohibits Urevig from soliciting Talman's customers for 12 months following her termination. Talman is aware of several accounts that Defendants have solicited since Urevig's resignation from Talman in June of this year.

Counts II and III of the Complaint allege violations of the Illinois Trade Secrets Act and the federal Defend Trade Secrets Act because Urevig took Talman's permitting manuals (which are compilations of the unique methodology developed by Talman), pricing information, customer contact information, and other confidential proprietary information and used it with Hacker to raid Talman's client base. Counts IV and V allege claims for unfair competition and intentional interference with Talman's customers.

Defendants have moved to dismiss the breach of contract claim in Count I, claiming that the Agreement's non-solicitation and confidentiality clauses are so overbroad as to render them unenforceable. Defendants also claim that the trade secret violations alleged in Counts II and III fail to state viable claims because Talman has not provided a specific enough description of the trade secrets and because the Complaint does not allege that there was any misappropriation. Defendants also seek to dismiss Counts IV and V because they are predicated on the conduct alleged in Counts I-III.

As explained in more detail below, Defendants' Motion to Dismiss should be denied because each of the reasons offered by Defendant for dismissal require the Court to make a fact-

based inquiry that is not appropriate at the Motion to Dismiss stage. Because the facts alleged in the Complaint establish a more than plausible basis for the Court to conclude that Defendants are liable for the alleged misconduct, the allegations are more than sufficient to meet the liberal pleading requirements of the federal rules. Defendants' Motion to Dismiss should therefore be denied in its entirety.

## LEGAL STANDARD

To survive a motion to dismiss for failure to state a cause of action, a plaintiff must show that its complaint alleges facts that, if true, "plausibly give rise to an entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. In analyzing the sufficiency of a complaint, a court must accept well-pleaded facts as true and draw all inferences in the plaintiff's favor. *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir.2008); *Iqbal*, 556 U.S. at 678. While a court is not bound to accept legal conclusions as true, legal conclusions "can provide the framework of a complaint…if supported by factual allegations." *Id*. Additionally, a court must not apply "too demanding a standard" on a motion to dismiss by inserting summary judgment considerations prematurely. *In re Montemurro*, 580 B.R. 490, 502 (Bankr. N.D. Ill. 2017) *citing Carlson v. CSX Transp., Inc.*, 758 F.3d 819, 826–27 (7th Cir. 2014).

## ARGUMENT

I. **Count I of the Complaint Properly States a Claim for Breach of Urevig's Employment Agreement.**

**A. The non-solicitation clause is not categorically unreasonable.**

Defendants first claim that the non-solicitation clause in Urevig's employment agreement is unenforceable on its face because it can be read to extend to customers with whom Urevig did

3

not have contact while she was employed at Talman. (ECF Dkt. 16, pp. 4-6). Defendants are mistaken, however, because even if the clause can be read to extend beyond customers that Urevig had contact with, that one fact would not render the provision unenforceable. It would, rather, only be one of several factors the Court is to weigh in a totality-of-the circumstances analysis.

In Illinois, a post-employment restrictive covenant is considered enforceable if it is determined to be reasonable and necessary to protect the employer's legitimate business interests. The test for determining reasonableness is a totality-of-the circumstances analysis which requires the court to examine a multitude of factors including "the near permanent customer relationships, the employee's acquisition of confidential information through her employment and time and place restrictions. No factor carries any more weight than another, but rather its importance will depend on the specific facts and circumstances of the individual case." *Reliable Fire Equip. Co. v. Arredondo*, 2011 IL 111871, ¶ 42, 965 N.E.2d 393, 403.

Because enforceability is determined by a fact-based inquiry, courts have routinely denied motions to dismiss and only granted such motions if the restriction is "categorically unreasonable." *Traffic Tech, Inc. v. Kreiter*, No. 14-CV-7528, 2015 WL 9259544, at *7 (N.D. Ill. Dec. 18, 2015); *see also LKQ Corp. v. Rutledge*, No. 21 C 3022, 2022 WL 1720590, at *3-4 (N.D. Ill. May 27, 2022) ("The reasonableness of the [restrictive covenant] hinges on a variety of factual issues that the Court cannot meaningfully address on the limited record currently before it."); *Aon plc v. Infinite Equity, Inc.*, No. 19-CV-07504, 2021 WL 4034068, at *16 (N.D. Ill. Sept. 3, 2021) ("The Court is thus unable to evaluate the reasonableness of the non-solicitation clause until it can consider all the relevant facts that a more developed record would provide."); *Nortek Prod. (Taicang) Ltd. v. FNA Grp., Inc.*, No. 10 C 2813, 2011 WL 2110043, at *4 (N.D. Ill. May 24, 2011) ("whether such restrictions are reasonable in this case requires the court to make a fact-

based inquiry that is not appropriate at the motion to dismiss stage."); *Integrated Genomics, Inc. v. Kyrpides*, No. 06 C 6706, 2008 WL 630605, at *7-8 (N.D. Ill. Mar. 4, 2008) ("because the facts of the case are of such importance to the issue of reasonableness, the court could not find … that making all reasonable inferences in favor of [plaintiff], it has not stated a claim for relief.").

Defendants cite *Montel Aetnastak, Inc. v. Miessen*, 998 F. Supp. 2d 694 (N.D. Ill. 2014) as support for the argument that Urevig's non-solicitation clause is unenforceable. (ECF Dkt. 16, p. 6). *Montel* is, however, readily distinguishable because the restrictive covenant at issue in *Montel* was a covenant not to compete that barred Miessen from engaging in any business "substantially related" to Montel's business anywhere in the United States and Canada. *Montel*, 998 F. Supp.2d at 717-18. In contrast, the restrictive covenant clause at issue in this case is a non-solicitation clause. It is not a non-competition clause and the clause does not restrict Urevig from competing against Talman in the permit acquisition business. The clause only prohibits Urevig from soliciting Talman's clients for 12 months. (ECF Dkt. 1-1, p. 3 at ¶ 5(b)).

*Montel* is also distinguishable because Montel apparently did not plead any facts to demonstrate that Meissen acquired any "confidential information during her employment with Plaintiffs and the restrictive covenant was required to protect the information." *Montel*, 998 F. Supp.2d at 717-18. In this case, unlike in *Montel*, the Complaint alleges that Talman developed and maintained confidential information related to a unique, step-by-step methodology developed by Talman's owners, which was based on their combined 30 years of experience in the business. The methodology significantly expedites the process for obtaining the requisite permits for infrastructure improvement projects. (ECF Dkt. 1, p. 2 at ¶¶ 3, 5).

The Complaint also alleges that Talman's methodology for permitting local projects was detailed in two permitting manuals and that Urevig took the manuals without permission while she

5

was still working for Talman. (ECF Dkt. 1, pp. 6-9 at ¶¶ 25, 34). The Complaint also alleges that Talman's owners have developed unique pricing formulas for its acquisition services and that Urevig, who was exposed to those formulas as part of her job responsibilities, has emailed solicitations on behalf of Hacker to Talman's customers. Those emails adopt the same pricing formulas that Talman developed. The emails also slightly undercut Talman's prices in every category. (ECF Dkt. 1, pp. 6-10 at ¶¶ 27, 39). The Complaint also alleges that Talman has taken reasonable measures to maintain the confidentiality of its permitting methodology, its pricing information, and its other confidential proprietary information. (ECF Dkt. 1, pp. 6-7 at ¶ 28).

Meissen's employment agreement also differed from Urevig's because Meissen's agreement did not contain a severance clause. (ECF Dkt. 1-1, pp. 9 at ¶ 18). This Court's ability to modify the non-solicit clause in this case is yet another reason why Plaintiff's Motion should be denied. Under Illinois law, a court may modify an overly broad restrictive covenant or sever any unenforceable provisions rather than invalidate it outright "if any injustice would result from rejecting the covenant in its entirety, such as where a defendant accepted employment with the plaintiff's direct competitor." *Mickey's Linen v. Fischer*, No. 17 C 2154, 2017 WL 3970593, at *15 (N.D. Ill. Sept. 8, 2017). This Court must therefore be able to examine all the facts before it can decide whether to exercise its blue pencil authority. This examination cannot be made at the motion to dismiss stage.

Defendants have therefore failed to provide this Court with any basis to dismiss the portion of Talman's breach of contract claim premised on the Agreement's non-solicitation clause.

### B. The confidentiality clause in the employment agreement is also enforceable.

Defendants argue that the breach of contract claim that is premised on the Agreement's confidentiality covenant should also be dismissed because the covenant is so overbroad as to be

unenforceable. (ECF Dkt. 16, p. 7). This argument also fails because it requires a fact-specific analysis to determine whether the restrictions are reasonably necessary for the protection of a legitimate proprietary interest." *Cincinnati Tool Steel Co. v. Breed*, 136 Ill. App. 3d 267, 276, 482 N.E.2d 170, 175 (2d. Dist. 1985).

Defendants cite two cases in support of their argument, *North American Paper Co. v. Unterberger*, 172 Ill. App.3d 410, 526 N.E.2d 621 (1st Dist. 1988) and *AssuredPartners, Inc. v. Schmitt*, 2015 IL App (1st) 141863, 44 N.E.3d 463. (ECF Dkt. 16, p.7). Tellingly, neither of those cases were decided until the summary judgment stage.

There is, furthermore, nothing categorically unreasonable about the confidentiality provision in Urevig's employment agreement. Urevig's Agreement, unlike the agreement in *Unterberger*, has plead the existence of specific trade secrets and confidential information, including its permitting manuals, its pricing information and customer contact information. Also, unlike the facts in *Unterberger* and *AssuredPartners,* the confidentiality provision in this case is limited to specific categories of information that are not readily available to Talman's competitors and which cannot be obtained from outside sources. (ECF Dkt. 1-1, pp. 4-5 at ¶ 5(c)). The provision thus cannot be read to apply to information that is not both confidential and proprietary.

Defendants have therefore failed to offer any legitimate basis to dismiss either of the breach of contract claims in Count I of the Complaint.

**II.    Counts II and III of the Complaint Properly State Claims for Trade Secret Misappropriation under DTSA and ITSA.**

Defendants claim that Counts II and III of the Complaint fail to allege violations of DTSA and ITSA because the Complaint does not sufficiently identify the trade secrets and because there are no allegations that Defendant misappropriated any information. (ECF Dkt. 16, pp. 8-10). Neither of these arguments have merit because (a) it is settled law that even general allegations

regarding the identity of trade secrets are sufficient to pass muster at the Rule 12(b)(6) stage, and (b) the Complaint does specifically identify the trade secrets that are at issue and the manner in which the trade secrets were misappropriated.

First, Defendants' argument that Talman has failed to identify its trade secrets with sufficient specificity ignores well-established law that for a trade secret claim "to survive a motion to dismiss, a complaint need only identify the alleged trade secret in a general sense." *Invado Pharms., Inc. v. Forward Sci. Distribution LLC*, No. 18 C 2515, 2018 WL 5013556, at *3 (N.D. Ill. Oct. 16, 2018); *see also Wells Lamont Indus. Grp. LLC v. Richard Mendoza & Radians, Inc.*, No. 17 C 1136, 2017 WL 3235682, at *3 (N.D. Ill. July 31, 2017) (To survive a motion to dismiss, a plaintiff need only "identify the trade secrets … generally to avoid publicly disclosing the information in a court filing."); *Mission Measurement Corp. v. Blackbaud, Inc.*, 216 F. Supp. 3d 915, 920–21 (N.D. Ill. 2016) ("[a]t the pleading stage, plaintiffs need only describe the information and efforts to maintain the confidentiality of the information in general terms.").

Second, contrary to the assertion in Defendants' brief, Urevig did not obtain the permitting manuals and other confidential information during the ordinary course of her business. (ECF Dkt. 16, p. 7). Rather, one month before her resignation, Urevig emailed Talman's trade secrets to her personal email account. (ECF Dkt. 1, p. 9 at ¶ 34); (ECF Dkt. 1-4). She did so even though she knew she was not allowed to do so without authorization. (ECF Dkt. 1, pp. 6-7 at ¶ 28(f)). Urevig also had no valid reason to email herself the information because she had been cleared to have access to the information via the Company network. Urevig also stole the Company's suburban and collar counties permitting manual even though her work did not go beyond the City of Chicago. (ECF Dkt. 1, p. 6 at ¶ 26). She was quite obviously teeing up the information to use it to compete with Talman.

The two cases cited by Defendants to support the argument that the Complaint does not adequately plead misappropriation are both inapposite. The facts in *Prominence Advisors, Inc. v. Dalton*, No. 17 C 4369, 2017 WL 6988661, at *4 (N.D. Ill. Dec. 18, 2017) are different from the facts in this case because in *Prominence*, there were no allegations that Dalton ever came into possession of company trade secrets without authorization or that Dalton had used any of the confidential information he possessed to compete with Prominence. *Id*. at *5. Here in contrast, the Complaint alleges that Talman's trade secrets were misappropriated because it is alleged that Urevig sent herself copies of the Permitting Manuals and other information without authorization and without any work-related purpose. (ECF Dkt. 1, pp. 6-9 at ¶¶ 26, 28(f), 34). The Complaint also alleges that Urevig used the permitting and pricing information to solicit Talman's customers. (ECF Dkt. 1, pp. 10-11 at ¶¶ 39-41).

The second case cited by Plaintiffs, *Call One, Inc. v. Anzine*, No. 18 C 124, 2018 WL 2735089 at *9 (N.D. Ill. June 7, 2018) is also inapposite because: (a) it was decided at the summary judgment stage as opposed to the motion to dismiss stage; (b) the single customer report at issue in *Call One* was not identified as confidential information by Call One; and (c) Anzine was apparently not prohibited from sending the information to his personal email account. *Id*. at *9. In this case, as explained above, Urevig knew that she was not authorized to email the confidential information to her personal e-mail account, the manuals are marked as confidential, and Urevig has used the information to steal Talman's customers on behalf of Hacker.

Defendants have, therefore, failed to offer any legitimate basis for dismissing the trade secret claims under DTSA and ITSA.

**III.     Defendants' Remaining Arguments Also Fail. Counts V and VI Both State Viable Claims and The Complaint also Clearly Designates the Defendants that are the Subject of Each Count.**

Defendants argue that Count IV fails to state a claim for unfair competition because the claim "is essentially duplicative of Talman's cause of action for tortious interference as pled in Count V." (ECF Dkt. 16, p. 10). This argument fails, however, because discovery has not yet taken place and it is not at all certain whether the two claims are duplicative. More importantly, it is established law in this Circuit that "a plaintiff may plead both tortious interference with prospective economic advantage and unfair competition." *Integrated Genomics, Inc. v. Kyrpides*, No. 06 C 6706, 2008 WL 630605, at *13 (N.D. Ill. Mar. 4, 2008); *see also Gorgonz Grp., Inc. v. Marmon Holdings, Inc.*, No. 00 C 2992, 2001 WL 103406, at *4 (N.D. Ill. Jan. 30, 2001).

Defendants argue that the claim for intentional interference with a business expectancy under Count V should be dismissed because Plaintiff cannot demonstrate the elements of a "reasonable expectancy of entering into a valid business relationship" and "damages resulting from the interference." (ECF Dkt. 16, pp. 11-12). This argument is also not appropriate at the motion to dismiss level because Talman is not required to prove its case at the pleading stage. Each of the cases cited by Defendants to support their argument were only decided after evidentiary hearings were held. (*Id.*); *Mannion v. Stallings & Co.*, 204 Ill. App. 3d 179, 188, 561 N.E.2d 1134, 1139 (1990); *Intervisual Communications, Inc. v. Volkert*, 975 F. Supp. 1092, 1103 (N.D. Ill. 1997).

Plaintiff's argument is also without merit because the Complaint plainly alleges that Talman has a long-standing relationship with its largest permit acquisition client, PirTano Construction and that Talman has "a reasonable expectancy of continuing to do business with PirTano and its other long-standing customers." (ECF Dkt. 1, p. 15 at ¶ 73). The Complaint also alleges that Talman suffered damages, in the form of lost revenue from PirTano, because of

10

Defendants' actions. (ECF Dkt. 1, pp. 10, 15 at ¶¶ 40, 77). There is, therefore, no merit to the claim that Count V should be dismissed.

Finally, Defendants argue that the Complaint fails to designate which Defendants are subject to each Count in the Complaint. (ECF Dkt. 16, pp. 12-13). This argument is without merit because Urevig established Hacker to compete with Talman. (ECF Dkt. 1, pp. 3, 9 at ¶¶ 9, 35). Urevig is the sole Manager and Member of Hacker. (ECF Dkt. 1, p. 4 at ¶14); (ECF Dkt. 1-5). It is thus apparent that all the Counts of the Complaint apply to both Defendants, except Count I, which is clearly directed only to Urevig, as a party to an employment agreement with Talman.

## CONCLUSION

For all the reasons stated above, Talman respectfully requests that this Court deny Defendants' Motion to Dismiss in its entirety.

Respectfully submitted,

**TALMAN CONSULTANTS, LLC**

By: /s/ *Kerry E. Saltzman*
     One of Its Attorneys

Kerry E. Saltzman (ARDC # 6191194)
Saltzman@wbs-law.com
Patrick M. Spellman (ARDC # 6327634)
Spellman@wbs-law.com
Williams, Bax & Saltzman, P.C.
221 N. LaSalle St. – Suite 3700
Chicago, IL 60601
(312) 372-3311

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing document was served upon all counsel of record for Defendants Alexandra Urevig and Hacker Consulting Group, LLC via ECF/CM on January 2, 2023.

By: */s/ Patrick M. Spellman*

Patrick M. Spellman (ARDC # 6327634)
Spellman@wbs-law.com
Williams, Bax & Saltzman, P.C.
221 N. LaSalle St. – Suite 3700
Chicago, IL 60601
(312) 372-3311