IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| TALMAN CONSULTANTS, LLC, an Illinois Limited Liability Corporation, <br><br> Plaintiff, <br><br> v. <br><br> ALEXANDRA UREVIG, individually and HACKER CONSULTING GROUP, LLC, an Illinois Limited Liability Corporation, <br><br> Defendants. | No. 22 C 6540 <br><br> Judge Virginia M. Kendall |

## MEMORANDUM OPINION AND ORDER

On November 21, 2022, Talman Consultants, LLC filed a Complaint against Alexandra Urevig and Hacker Consulting Group, LLC (collectively, "Defendants"), alleging that Defendants misappropriated trade secrets and breached the parties' employment agreement. Defendants responded to Talman's Complaint and filed several counterclaims, including a Title VII violation. Talman now moves to dismiss the Title VII claim and strike certain allegations pursuant to Federal Rules of Civil Procedure 12(b)(6) and 12(f). (Dkt. 44). For the following reasons, the motion to dismiss is granted in part and denied in part and the motion to strike is denied. (*Id.*)

## BACKGROUND

Talman Consultants, LLC is an engineering consulting firm that advises companies on the location, construction, and permits for underground utilities. (Dkt. 38 at 26 ¶ 5). Talman promotes integrity, diversity, and honesty among its employees. (*Id.* at 27–28 ¶ 18). For example, Talman's company handbook states that "it endeavors to maintain a positive work environment" where employees "must abide by certain rules of conduct, based on honesty, common sense, and fair play." (*Id.* at 28 ¶ 19). Moreover, it deems "gambling on Company property," "[f]ailure to perform

assigned job duties," and "violation of Talman Consultants, LLC's Harassment, or Equal Employment Opportunity Policies" as unacceptable actions. (*Id.*) Urevig alleges that Talman's senior leadership has acted contrarily to Talman's company handbook. (*Id.* at 28 ¶ 20). She alleges that one of Talman's co-founders, James Norton, has not been personally completing the requisite steps to maintain his active engineering license. (*Id.* at 28 ¶¶ 21–22) Instead, he outsourced that responsibility to Urevig. (*Id.* at 28 ¶ 22). She took the exams and went through the process to ensure that Norton kept his engineering license in good standing. (*Id.*) Furthermore, Urevig states that Talman's senior leadership condoned a ticket-buying scheme where employees used company funds to purchase sports and concert tickets that were then re-sold to personally benefit a relative of the company's principal. (*Id.* at 28 ¶ 23).

Urevig also alleges that she faced gender discrimination at Talman. (*Id.* at 29 ¶ 25). Specifically, she was not given the same opportunities as male employees. (*Id.* at 29 ¶ 27). For example, she cited that a senior project manager, Richard Reynoso, would constantly harass and belittle Urevig, including commandeering her client and work product. (*Id.* at 29 ¶¶ 30, 32). As a result, Reynoso received a larger bonus than she did for work that he did not perform. (*Id.* at 29–30 ¶ 33). Furthermore, another senior Talman employee referred to Urevig as a "skirt." (*Id.* at 30 ¶ 34). On several occasions, Urevig brought her gender discrimination and harassment experiences to Talman's human resources department, but no changes were made. (*Id.* at 29–30 ¶¶ 28, 35). Because of Talman's discriminatory conduct, Urevig submitted a charge to the Illinois Department of Human Rights. (*Id.* at 30 ¶ 37).

When she started at Talman, Urevig signed an employment agreement that contained a non-solicitation and a confidentiality clause. (Dkt. 1 ¶ 29). In June 2022, Urevig resigned from Talman and started her own consultancy firm, Hacker Consulting Group, LLC. (*Id.* at ¶¶ 35–36).

2

On November 21, 2022, Talman filed a Complaint against Defendants, alleging that they breached the employment agreement's non-solicitation and confidentiality clauses and misappropriated trade secrets. (*Id.* at ¶¶ 42–68). Defendants answered Talman's Complaint and counterclaimed that Talman discriminated against Defendants on the basis of sex in violation of Title VII of the Civil Rights Act of 1964. (Dkt. 38 ¶¶ 38–46). Defendants also seeks declaratory judgments that the non-solicitation and confidentiality provisions in Urevig's employment agreement are overbroad and unenforceable. (*Id.* at ¶¶ 47–67). Talman now moves to dismiss the Title VII claim (Count I) and strike certain factual allegations within Defendants' Answer.

## DISCUSSION

### I. Motion to Dismiss

Talman's motion to dismiss presents two arguments. First, they move to dismiss Hacker under Count I because Hacker and Talman never had an employment relationship. Thus, there can be no Title VII claim. *See Alam v. Miller Brewing Co.*, 709 F.3d 662, 667–69 (7th Cir. 2013) (upholding dismissal of Title VII claim against defendant MillerCoors because there was no employment relationship between plaintiff and defendant). Second, they move to dismiss Urevig under Count I because as a former employee, she no longer has standing to seek declaratory or injunctive relief under Title VII. *See O'Shea v. Littleton*, 414 U.S. 488, 495–96 (1974) ("Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief ... if unaccompanied by any continuing, present adverse effects.").

Defendants do not dispute either argument. Under Count I, Defendants agree that Hacker should be dismissed. Furthermore, Defendants agree that Urevig does not have standing to seek declaratory or injunctive relief under Title VII but urge the Court to only dismiss the portion of Count I that requests declaratory or injunctive relief—subparagraphs 46(A)–(C). Talman notes,

3

and the Court agrees, that subparagraph (D) also seeks injunctive relief, as it requests the Court to "[d]irect [Talman] to take such affirmative action as is necessary to ensure that the effects of these unlawful practices are eliminated." (Dkt. 38 ¶ 46(D)).

Thus, the Court grants Talman's motion to dismiss Hacker and partially grants Talman's motion to dismiss Urevig—subparagraphs 46(A)–(D) are dismissed but Urevig is still free to pursue monetary damages under Title VII.

## II. Motion to Strike

Rule 12(f) provides that a district court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f); *see Delta Consulting Grp., Inc. v. R. Randle Const., Inc.*, 554 F.3d 1133, 1141 (7th Cir. 2009). For the court to grant a motion to strike, the movant must show that "'the allegations being challenged are so unrelated to plaintiff's claim as to be void of merit and unworthy of any consideration' and that the allegations are unduly prejudicial." *See, e.g., Cumis Ins. Soc. v. Peters*, 983 F.Supp. 787, 798 (N.D. Ill. 1997) (citation omitted). "Prejudice results where the challenged allegation has the effect of confusing the issues or is so lengthy and complex that it places an undue burden on the responding party." *Id.* Motions to strike are viewed with disfavor because striking a portion of a pleading is a drastic measure. 5A Charles A. Wright and Arthur R. Miller, Federal Practice and Procedure § 1380 (1990). Consequently, motions to strike are frequently denied "when no prejudice could result from the challenged allegations, even though the matter literally is within the category set forth in Rule 12(f)." *Id.* at § 1382. District courts have considerable discretion to strike allegations under Rule 12(f). *Delta Consulting Grp.*, 554 F.3d at 1141–42.

Talman seeks to strike paragraphs 20–24 and 35 of Defendants' counterclaim. Those paragraphs discuss Talman's alleged violations under the company handbook, including Norton's

4

failure to personally maintain an active engineering license and the ticket-buying scheme. Talman argues that these statements are irrelevant to Defendants' counterclaims and are prejudicial towards Talman. Defendants counter by stating that these statements are relevant to how Urevig was treated during her employment at Talman. For example, Defendants state that while Urevig was ensuring Norton's license was in good status, substantive opportunities were redirected to a male employee. Moreover, they argue that the statements are relevant to their affirmative defenses.

Paragraphs 20–24 and 35 are unrelated to Defendants' counterclaims, but they could be material to the affirmative defenses. Starting with Count I, the paragraphs at issue discuss various company violations under the company handbook but they do not implicate any facts of sexual harassment or discrimination. Defendants attempt to bridge that gap by stating that substantive opportunities were redirected to a male employee because Urevig was assisting Norton, but Defendants never made this allegation in their counterclaim. Instead, Defendants present discrete company improprieties, including an instance of gender discrimination, but there are no facts to suggest that the ticket-buying scheme or Norton's failure to personally maintain an engineering license are connected to any missed opportunities. Similarly, those improprieties are inconsequential as to whether the non-solicitation and confidentiality provisions in Urevig's employment agreement are unreasonable and overbroad. As such, paragraphs 20–24 and 35 bear no weight on establishing a *prima facie* Title VII claim or determining the enforceability of the employment agreement.

The paragraphs, however, could be relevant to Defendants' affirmative defenses. The company handbook requires a terminated employee to return all information and property to Talman. In their Answer, Defendants argue that the handbook is an agreement and Talman's violations constitute a breach. Since Talman has breached the agreement, they cannot enforce any

part of the handbook against Defendants. Talman counters by arguing that the company handbook is not a contract and the counterclaims are solely based on Urevig's employment agreement. Thus, the issues are whether the company handbook can be construed to be a contract between the parties and how does it inform Urevig's employment agreement. Those are legal questions and a motion to strike is not the time or place to rule on their outcomes. *See, e.g.*, *Riemer v. Chase Bank, N.A.*, 275 F.R.D. 492, 494 (N.D. Ill. 2011) (stating that a motion to strike is not a mechanism for deciding disputed issues of law or fact); *Jones Truck Lines, Inc. v. Kraft Gen. Foods, Inc.*, 1993 WL 420962, at *1 (N.D. Ill. Oct. 18, 1993) (finding that "courts are reluctant to determine disputed or substantial issues of law on a motion to strike; these questions quite properly are viewed as determinable only after discovery and a hearing on the merits."). At this stage, the Court finds that Paragraphs 20–24 and 35 could be relevant to Defendants' affirmative defenses.

Even if those paragraphs are irrelevant to Defendants' counterclaims and affirmative defenses, Talman's motion to strike would still fail because Talman has not shown that paragraphs 20–24 and 35 are unduly prejudicial. *See, e.g.*, *Jones Truck Lines, Inc.*, 1993 WL 420962, at *1 ("Thus, even when technically appropriate and well-founded, [motions to strike] often are not granted in the absence of a showing of prejudice to the moving party."). Talman asserts that paragraphs 20–24 and 35 are prejudicial because they confuse the issues relating to Defendants' counterclaims. The Court is not so convinced. Neither the paragraphs at issue nor the claims and counterclaims in this case are so complicated as to confuse a factfinder. Furthermore, if those

6

allegations are presented before a factfinder, the parties will have opportunities to dispute their relevancy in motions *in limine*. Therefore, Talman's motion to strike is denied.

## CONCLUSION

For the foregoing reasons, the Court grants in part and denies in part Talman's motion to dismiss and denies its motion to strike. [44]

Virginia M. Kendall
United States District Judge

Date: October 19, 2023